UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                            :
JAMIE MORALES,                              :       04 Civ. 2642 (SHS)
                    Petitioner,             :
                                            :       OPINION & ORDER
         -against-                          :
                                            :
UNITED STATES OF AMERICA                    :
                    Respondent.             :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Jamie Morales brings a petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and a motion for a new trial pursuant to Fed. R. Crim. P. 33. On March 7, 2001, a jury found Morales guilty of conspiring to distribute heroin in violation of 21 U.S.C. § 846. Morales' petition pursuant to Section 2255 is dismissed on the grounds that it is untimely and is barred by Morales' knowing and voluntary waiver of the right to attack his sentence collaterally. Morales' motion for a new trial pursuant to Fed. R. Crim. P. 33 is denied on the grounds that it is untimely and that Morales previously knowingly and voluntarily withdrew that motion in order to realize the benefit of a sentencing agreement he had entered into with the government.

I. Background

Substantial evidence at trial showed that Jaime Morales agreed to receive and deliver heroin on behalf of a Columbian narcotics distributor. Among the several witnesses against Morales was Marino Lara, a paid informant for the Drug Enforcement Administration ("DEA"). On cross-examination, defense counsel elicited testimony from Lara that suggested that working as a DEA informant was an easy way to make money. (See Trial Tr. 237-38). On re-direct examination, the government endeavored to rebut that impression by questioning Lara regarding an incident that demonstrated how challenging that work was. The incident, which was not

1

directly related to the charges against Morales, involved Lara being kidnapped and robbed of $12,000 while doing undercover work. (See Trial Tr. 360-61).

Approximately four months after Morales' conviction, the Assistant United States Attorneys who had prosecuted Morales (the "trial AUSAs") wrote to the Court that they had learned that Lara had testified falsely regarding certain details of the kidnapping and robbery. (See Letter of Diane Gujarati and Christopher Morvillo to the Court dated July 9, 2001). Several months prior to the Morales trial, in a proffer session conducted by Assistant United States Attorneys for the Southern District of New York other than the trial AUSAs, a putative cooperating defendant discussed the kidnapping and robbery of Lara. (Id. at 2). That individual claimed that he and others kidnapped Lara and stole a safe containing $60,000 from him. (Id.). In another proffer session that occurred a month after the end of the Morales trial, the putative cooperator mentioned that the safe also contained approximately half an ounce of cocaine and some paperwork. (Id.). The trial AUSAs learned of these proffer sessions after the Morales trial had ended. (Id.). They confronted Lara, who insisted that the account he had told at trial was accurate. (Id.). On June 5, 2001, another of Lara's kidnappers engaged in a proffer session with the government and also mentioned the theft of a safe containing $60,000 and cocaine. (Id.).

As a result of the government's disclosure, the defendant moved for dismissal of the indictment or, in the alternative, for a new trial. After negotiations with the government, the defense withdrew that motion on April 3, 2002 in contemplation of completing a Sentencing Agreement that the parties were in the process of negotiating. (See Tr. of April 3, 2002 conference at 2-4; Sentencing Agreement dated May 2, 2002 ("SA") at 1). Approximately six months later, on September 25, 2002, the parties executed the Sentencing Agreement in reliance

on the fact that Morales had withdrawn with prejudice his pending motion for dismissal of the indictment or for a new trial. (See SA at 1).

The Sentencing Agreement reflected the joint position of the parties that Morales should not be sentenced by the Court in compliance with the statutory mandatory minimum term of 120 months imprisonment, but rather that he qualified for "safety valve" treatment pursuant to 18 U.S.C. § 3553(f). Accordingly, in the Sentencing Agreement, the parties agreed to the following determinations pursuant to the United States Sentencing Guidelines: the appropriate adjusted offense level was 28, the criminal history category was I and the sentencing range was 78 to 97 months imprisonment. The stipulated base offense level was 34, but the parties agreed to a two level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, a two level reduction for satisfaction of the safety valve criteria pursuant to U.S.S.G. § 2D1.1(b), a two level reduction for the defendant's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and a four level reduction for Morales' minimal role pursuant to U.S.S.G. § 3B1.2(a). The Sentencing Agreement also permitted the defendant to move for a downward departure on the grounds of extraordinary family circumstances and aberrant conduct.

The Court sentenced Morales on September 26, 2002. Early in the hearing, the Court engaged the defendant in the following colloquy regarding the materials relevant to his sentencing, including the Sentencing Agreement:

> THE COURT: Mr. Morales, have you had an opportunity to read and discuss this information with your attorney?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you, in fact, read and discussed it with [your attorney] Mr. Feinstein?
> THE DEFENDANT: Yes, Sir.

(Tr. of Sept. 26, 2002 Sentencing Hr'g at 4). Later in the hearing, the Court specifically commented that the Sentencing Agreement reflected a bargain favorable to the defendant:

> THE COURT: Well, I'll talk quite specifically about that agreement, since you're focusing my attention on it or asking me to respond.
> Overall, I think that agreement was given the guidelines calculations prior to the agreement and the fact that the pending motion, in my view, was not likely to succeed, I think that the agreement overall is very good for the defendant. And I think, in part, it reflects an understanding by the government of your position on how you characterize the defendant as a person and his law-abiding life, and so forth.
> In other words, I think the government was assisting the defense or was being – I won't say generous, but I think this was a good agreement for the defense.

(Id. at 22). Toward the end of the hearing, the Court ensured that Morales understood his appeal rights and that he had waived them in the Sentencing Agreement. That interchange was as follows:

> THE COURT: I also wish to inform you that in the agreement you signed on May 2 of this year, or actually – I'm sorry – the agreement that you signed on September 25, that is dated May 2, states that you are waiving your right to appeal the sentence if I sentence you within or below the guideline range of 78 to 97 months. And I have done that.
> Do you understand the waiver of that part of your appeal rights?
> THE DEFENDANT: Yes.
> THE COURT: If you request, sir, the clerk of court will prepare and file a notice of appeal on your behalf immediately. Do you understand your appeal rights in general, sir?
> THE DEFENDANT: Yes.

(Id. at 32).

The Court adhered to the stipulated adjusted offense level, but included an additional two level departure pursuant to U.S.S.G. § 5K2.0 on the grounds of a combination of aberrant behavior and extraordinary family circumstances. (See Tr. of Sept. 26, 2002 Sentencing Hr'g at 26-28). Even though the parties' Sentencing Agreement provided for an adjusted offense level of 28 and a stipulated sentencing range of 78 to 97 months, the Court arrived at an adjusted offense level of 26 and a sentencing range of 63 to 78 months. The Court sentenced the defendant principally to 63 months of incarceration.

II. Analysis

Morales challenges his conviction and sentence on the following grounds: (1) that the withdrawal of his motion to dismiss the indictment or for a new trial was not made knowingly and intelligently; (2) that he received ineffective assistance of counsel; (3) that his sentence violated the requirements of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed.2d 435 (2000) and Blakely v. Washington, --- U.S. ----, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); and (4) that the admission into evidence of the guilty pleas of non-testifying co-conspirators did not comply with the rule of Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004). In addition, as noted, Morales has moved for a new trial pursuant to Fed. R. Crim. P. 33 on account of newly discovered evidence.

A. The Petition Is Untimely

Morales' petition pursuant to 28 U.S.C. § 2255 is dismissed because it is untimely. A Section 2255 petition must be filed within one year of the date on which a defendant's conviction becomes final. Judgment against Morales was entered on October 1, 2002, and his conviction became final on October 11, 2002, when his time to file a notice of appeal pursuant to Fed. R. App. P. 4(b) expired. See Moshier v. United States, 402 F.3d 116 (2d Cir. 2005).[1] To be timely, Morales' petition would have to have been filed by October 11, 2003. It was not in fact filed until March 8, 2004, five months after the deadline.

Despite his late filing, Morales contends that his petition should be treated as timely because he merits equitable tolling. A petition may be brought after the expiration of the one year period that Section 2255 prescribes if the petitioner can show the "'rare and exceptional

---

[1] Currently, the time period for filing a notice of appeal excludes intervening Saturdays, Sundays and holidays. See Fed. R. App. P. 26(a)(2). However, at the time of Morales' conviction, Rule 26(a)(2) counted all consecutive days. See Moshier v. United States, 402 F.3d 116, 119 n.1 (2d Cir. 2005).

5

circumstance[ ]'" that prevents a petitioner from filing a timely petition. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (citations omitted and alteration in original). The party invoking the doctrine must demonstrate that he "acted with reasonable diligence throughout the period he seeks to toll." Id. That is because to merit tolling, a "petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (internal quotation marks and citation omitted).

On October 6, 2003, shortly before the expiration of the period within which he may have properly filed his petition, Morales moved for an extension on the grounds that: 1) he suffered from depression; 2) he was consuming psychotropic medication "during the trial and other crucial phases of the case"; 3) he was impoverished and unable to purchase a trial transcript or hire an attorney; 4) his trial counsel did not inform him of the possibility of bringing a petition pursuant to 28 U.S.C. § 2255; and 5) his primary language is Spanish. (See Brief in Supp. of Def.'s Mot. to Enlarge Time to File a Motion Under 28 U.S.C. § 2255 at 6).

Morales has not made a sufficient showing to justify equitable tolling on the grounds that his depression and consumption of drugs interfered with his cognition. In his declaration, Morales asserts that during the pendency of this matter he has suffered from major depression and taken Sevzone and Celexa, psychotropic medications. (Morales Declaration-Petition in Supp. of Mot. to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 and/or Motion for a new trial Under Fed. R. Crim. P. 33 ("Morales Decl.") ¶ 3k(iii)). He claims that "[a]t various … times while taking Sevzone and/or Celexa, including during the progression of my

6

case, I have experienced feelings of confusion, nervousness, and drowsiness, all adverse reactions to Sevzone and/or Celexa." (Id. ¶ 3k(vii)). As a result, he claims that he was "not competent during the proceedings." (Id. ¶ 4).

These claims lack substantiation. Morales fails to point to any support for his bald assertion that he suffered cognitive impairment. In addition, Morales has failed to ground his claim in the relevant temporal terms; he does not specifically claim to have been consuming any drugs or suffering from depressive symptoms during the period in which he should have filed his petition. See Jean-Louis v. Greiner, No. 02 Civ. 6326, 2003 WL 1807144, at *3 (S.D.N.Y. Apr. 4, 2003). Even if Morales experienced depression or consumed drugs during the relevant time period, he has not adequately alleged that he was unable – even with the exercise of reasonable diligence – to file a petition during that time period. See Cox v. Edwards, No. 02 Civ. 7067, 2003 WL 22221059, at *3 (S.D.N.Y. Sept. 26, 2003) (no equitable tolling for prisoner who suffered from Grave's disease, as well as mood and paranoia swings and who had been repeatedly hospitalized and provided medication); Jean-Louis, 2003 WL 1807144, at *3 (long history of mental illness and placement in psychiatric units before the limitations period did not establish extraordinary circumstances during limitations period).

The evidence in the record sharply controverts Morales' unsupported claims that he has been hindered by significant cognitive impairment. Morales has submitted a letter from his physician, Dr. Claudio Dicovskiy, indicating that Morales "showed no Psychotic symptoms" and that his "thinking was free of any delusional content or thought." (Letter of Claudio Dicovskiy, M.D., dated May 24, 2001). The physician further commented that Morales' "insight and judgment seemed good" and that he "does not seem to show any sign of serious Mental Illness."

(See id.).[2]  The affidavits of Miles Feinstein – Morales' pre-trial and first post-trial attorney – and Rick Garcia – Morales' trial attorney – provide additional evidence of Morales' significant cognitive capacity. Feinstein explained that "I have been practicing law since 1967 and I venture to say that I met with Mr. Morales and his family as many or more times than any client I have represented." (Aff. of Miles Feinstein dated April 8, 2005 ¶ 6). Feinstein attested to the fact that Morales "had the ability to and did consult with me with a rational and factual understanding of the proceedings against him." (Id. ¶ 2). Feinstein also wrote that Morales "conversed with me about all aspects of his case and asked relevant questions, which I answered and he appeared to

---

[2] Dr. Dicovskiy's letter of May 24, 2001 reads in pertinent part as follows:

To Whom It May Concern:
   Mr. Jaime Morales is a 37 year old married male, father of one child who was presented to my Medical Office initially on 10/19/2001 [an unascribed handwritten marginal notation indicates "s/b 10-19-2000"] after being referred by his Internist (Dr. Luis Avila) due to complaints of depressed mood, anxiety, sleep disturbance and restlessness.
Mr. Morales stated that he has been feeling this way since being arrested and incarcerated due to charges of drug trafficking.
   ****
Mr. Morales denies any history of Psychiatric disorder he also denies any legal history.
He denies any use of alcohol or drugs.

Mr. Morales is married and has an 8 year old son.
He reports no history of any legal problems.
He denies any family history of Mental Illness.

MENTAL STATUS EXAMINATION.

Patient appeared on time to his scheduled appointment. He was well groomed, casually dressed.
He appeared somewhat anxious and his mood seemed depressed.
He spoke fluently, clear, coherent and goal directed in Spanish.
He showed no Psychotic symptom. His thinking was free of any delusional content of thought.
He was alert and fully oriented to date, place and person.
Impulse control was good.
Insight and Judgment seemed good.

IMPRESSION

Mr. Jaime Morales does not seem to show any sign of serious Mental Illness. He appears to have suffered an adjustment reaction to what he went through.

Sincerely,
/s/
Claudio Dicovskiy, M.D.

understand." (Id.). Garcia commented that Morales "seemed to comprehend what was going on …." (Aff. of Rick Garcia dated April 11, 2005 ¶ 4).

In light of the considerable record evidence of Morales' proper cognitive functioning, his vague, unsupported allegations of mental impairment do not justify equitable tolling. Moreover, those allegations are not grounded in the proper time period – the year after his conviction became final. Specifically, he claims that he was consuming drugs "[t]hroughout the tenure of this instant case," without specifying if that period included the year following his conviction. (Morales Decl. ¶ 3k(iii)). Even if credited, Morales' allegations do not demonstrate that he would have been unable to file a petition had he acted with reasonable diligence. See Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003).

The other grounds that Morales has asserted as a basis for equitable tolling do not constitute the sort of extraordinary circumstances in which it is appropriate to toll the Section 2255 statute of limitations. Claims of inability to retain an attorney, see Smith, 208 F.3d at 18, trouble with English, see Silvestre v. United States, 55 F. Supp. 2d 266, 268 (S.D.N.Y. 1999), ignorance of the law, see Ayala v. Fischer, No. 04 Civ. 3404, 2004 WL 2435523, at * 1 (S.D.N.Y. Nov. 2, 2004), and difficulty obtaining documents, see Hardy v. Conway, 299 F. Supp. 2d 159, 161 (E.D.N.Y. 2004), do not, without more, warrant tolling.

In sum, Morales has failed to allege that he encountered extraordinary circumstances that would justify equitable tolling. A factual hearing is unnecessary, because "[t]he motion and the files and records of the case conclusively show that the petitioner is entitled to no relief…." 28 U.S.C. § 2255. Morales' Motion to Enlarge Time to File under 28 U.S.C. § 2255 is denied, and his petition pursuant to Section 2255 is dismissed as untimely.

B. Morales Had Waived His Right to Bring a Petition

Even were Morales' petition timely, it would nonetheless be barred by his knowing and voluntary waiver of his right to attack his sentence collaterally. Such waivers are generally enforceable. See, e.g., Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195-96 (2d Cir.2002); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir.2001) (per curiam); Ramos v. United States, No. 97 Civ. 7066, 98 Cr. 828, 1998 WL 60941, at *5 (S.D.N.Y. Feb. 13, 1998) (enforcing a waiver of the right to bring a Section 2255 petition contained in a sentencing agreement). Waivers of collateral attack rights are unenforceable, however, when entered into with ineffective assistance of counsel, see Frederick, 308 F.3d at 195; see also United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir.2001), or when they are not knowing and voluntary, see United States v. Martinez-Rios, 143 F.3d 662, 668 (2d Cir. 1998).

The Sentencing Agreement Morales signed contained the following waiver:

> It is further agreed … that the defendant will neither appeal, nor otherwise litigate under Title 28 United States Code, Section 2255, any sentence within or below the Stipulated Guidelines Range set forth above …. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. This provision is binding on the parties regardless of the result of any litigation in the District Court relating to any motion by the defendant for a downward departure based on extraordinary family circumstances, aberrant conduct and/or the totality of the circumstances.

(SA at 4). The terms of that provision bar Morales from bringing the instant petition.

Morales contends that he cannot be held to the terms of the Sentencing Agreement because he did not execute the agreement knowingly and voluntarily and because he received ineffective assistance of counsel. However, he provides no specific allegations to support that claim and has failed to make any showing whatsoever that his waiver of his right to bring a petition pursuant to 28 U.S.C. § 2255 was not knowing and voluntary.

Rather, the record contains considerable support for the conclusion that Morales intentionally and knowingly acceded to the terms of the Sentencing Agreement in order to benefit from the favorable sentencing terms the government offered in that agreement. That Morales was cognizant of the terms of his bargain with the government is supported by the facts that Morales signed the Sentencing Agreement, that he stated under oath at his sentencing that he had received the sentencing materials – which included the Sentencing Agreement – and had discussed them with his attorney (Tr. of Sept. 26, 2002 Sentencing Hr'g at 4) and that his attorney confirmed that (id.). As set forth more fully below, the record demonstrates that Morales, in consultation with his attorney, made the strategic decision to forgo certain rights in exchange for the government's corresponding willingness to agree to favorable sentencing terms that would be presented to the Court.

The court's confidence that Morales forfeited his rights knowingly and voluntarily is not now undermined by his vague assertions that his cognitive capacity was diminished "[t]hroughout the tenure of this instant case…." (Morales Decl. ¶ 3k(iii)). As noted above, evidence in the record belies Morales' generalized, unsupported claims. In light of the substantial, cogent record evidence of Morales' proper cognitive functioning, as well as the Court's observation of Morales during all court proceedings in this action, the Court finds Morales' allegations insufficient to raise a material issue regarding whether he knowingly and voluntarily waived his right to bring a Section 2255 petition.

Morales has also failed to establish that he was denied effective assistance of counsel when waiving his right to bring a petition pursuant to Section 2255. Ineffective assistance of counsel entails "(1) that counsel's performance 'fell below an objective standard of reasonableness,' and (2) that there is a 'reasonable probability' that, but for the deficiency, the

outcome of the proceeding would have been different." McKee v. United States, 167 F. 3d 103, 106 (2d Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)) (citations omitted). Nothing in the record supports a showing pursuant to either prong of the Strickland test.

Morales has failed to show that his trial counsel did not perform in accordance with an objective standard of reasonableness. Morales cannot overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004) (quoting Strickland, 466 U.S. at 689); United States v. Jones, 918 F.2d 9, 12 (2d Cir. 1990). Morales has offered little more than "hindsight to second-guess his [counsel's] strategy choices." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

It was prudent for Morales' counsel to advise acceptance of the Sentencing Agreement – which included the waiver of the right to bring a Section 2255 petition – because it provided Morales highly favorable sentencing terms. Morales ultimately received a sentence principally of 63 months incarceration, just above half of the statutory mandatory minimum of 120 months. Given the strength of the government's case against Morales and the weakness of Morales' post-trial motion, Morales has no viable claim that his attorney's acceptance of that agreement was objectively unreasonable. See McKee, 167 F. 3d at 106.

Morales also cannot show prejudice. "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Wiggins v. Smith, 539 U.S. 510, 534, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (quoting Strickland, 466 U.S. at 694). In light of the government's substantial proof and the favorable terms of the Sentencing Agreement, Morales can only show a

reasonable probability that the outcome might have been more adverse to him had he not acceded to the Sentencing Agreement.

Morales has failed to assert a colorable claim that his waiver of his right to bring a petition pursuant to Section 2255 was anything but knowing and voluntary or that he received ineffective assistance of counsel in connection with that waiver. The Court will hold Morales to his bargain and preclude his motion pursuant to Section 2255. The Court need not address the merits of the petition. See Latham v. United States, 164 F. Supp. 2d 365, 366 (S.D.N.Y. 2001).

C. Forfeiture of the Rule 33 Motion

Fed. R. Crim. P. 33(b)(1) provides that a defendant may bring a motion for a new trial grounded on newly discovered evidence within three years of the verdict. Morales contends that the information that a portion of Lara's testimony was untruthful constitutes newly discovered evidence. Morales' motion is denied, both because it is untimely and because it is barred by the Sentencing Agreement.

Morales brought this motion one day after the expiration of the three-year period that Rule 33(b)(1) provides. The verdict was rendered on March 7, 2001 and Morales filed this motion on March 8, 2004. Morales has proffered no justification for the late filing. He has known about the purportedly new evidence since the government's letter of July 9, 2001.

If timely, Morales' motion for a new trial would nevertheless be precluded by the Sentencing Agreement. Relying on the government's July 9, 2001 disclosure regarding Lara's testimony, Morales brought a post-trial motion for dismissal of the indictment or for a new trial. Morales withdrew that motion in contemplation of the government accepting the terms of the Sentencing Agreement. (SA at 1; Tr. of April 3, 2002 conference at 2-4). The Sentencing

Agreement specifically provided that the withdrawal of Morales' post-trial motion was with prejudice. (SA at 1).

Morales alleges that his withdrawal of the post-trial motion was not made knowingly and voluntarily, and that it was made with ineffective assistance of counsel. (Morales Decl. ¶¶ 3m, 3k(viii), 4). However, once again Morales fails to support his bald assertions. The record confirms that Morales, in consultation with his attorney, made the strategic, knowing and voluntary choice to withdraw his motion so that he and the government could jointly present favorable sentencing terms to the Court.

Morales made the reasoned decision to withdraw his post-trial motion upon the sound tactical advice of his first post-trial attorney, Miles Feinstein, who submitted an affidavit that explains as follows:

> Regarding the withdrawal of the motion to dismiss the indictment based on prosecutorial misconduct, or in the alterative, for a new trial, Mr. Morales once again had a complete understanding. He was told that there was no guarantee that the motion would be granted and if it was, he would most likely have to have to stand trial again. He had already been convicted by a jury and his guidelines and exposure was extremely high. All of this was explained and he clearly understood. At sentencing, he received a considerable break, and I believe that the Court granted a downward departure. He conveyed to me that he was very pleased with the result, as he should have been. Some members of his family were elated with the ultimate sentence and thanked me for my efforts and the result.

(Feinstein Aff. ¶ 4). Morales' vague, unsupported claims of cognitive impairment are insufficient to draw the knowing and voluntary nature of the withdrawal into question.

Morales has also failed to raise a colorable claim of ineffective assistance of counsel in relation to the withdrawal of his post-trial motion. The record demonstrates that the withdrawal was a strategic decision made to induce the government to enter into the Sentencing Agreement. Given the strength of the government's case and the favorable terms of the Sentencing

Agreement, it was not objectively unreasonable for Feinstein to withdraw Morales' post-trial motion.

In addition, Morales cannot show prejudice resulting from his agreement to withdraw the post-trial motion. The Court commented at the sentencing that the post-trial motion was unlikely to be successful. (Tr. of Sept. 26, 2002 Sentencing Hr'g at 22). Even if Morales had been granted a new trial, there is no reason to think the result would have been different. The evidence against Morales at the first trial was substantial. In consideration of the weakness of the post-trial motion, the strength of the government's case and the favorable terms of the Sentencing Agreement, Morales cannot show prejudice from the decision to withdraw his post-trial motion.

The record belies Morales' unsupported claims that the withdrawal of his post-trial motion for a new trial stemmed from a lack of proper cognitive functioning and ineffective assistance of counsel. Morales is held to the terms of the Sentencing Agreement, which preclude him from raising his motion for a new trial anew.

III. Conclusion

Because Morales knowingly waived his right to collaterally attack his sentence and because he has failed to act in a timely manner, his petition pursuant to 28 U.S.C. § 2255 is dismissed. Morales' untimely motion for a new trial pursuant to Fed. R. Crim. P. 33 is denied, because he knowingly and voluntarily withdrew that motion with prejudice in order to realize the benefit of the Sentencing Agreement.

As Morales has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-13 (2d Cir. 2000); <u>Soto v. United States</u>, 185 F.3d 48, 51-53

(2d Cir. 1997). Finally, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

Dated: New York, NY
       June 7, 2005

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.